UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :
         -against-                   :     05 Cr. 87 (HB)
                                     :
FREDRIC BLAIR LAYNE, and             :     OPINION & ORDER
MICHAEL SCARPON,                     :
                                     :
                    Defendants.      :
-----------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Defendants jointly move to change the venue of this action from the Southern District of New York to the Southern District of Florida in accordance with Fed. R. Crim. P. 21. For the foregoing reasons, Defendants' motion is hereby GRANTED.

## I. BACKGROUND

On January 21, 2005, the Government filed a two count indictment against Defendants Frederic Blair Layne ("Layne") and Michael Scarpon ("Scarpon") and charged them with wire fraud (Count One) and conspiracy to commit wire fraud (Count Two). (Indictment at ¶¶ 2-3; 6) (Dckt. 25.) According to the Complaint, from February 2001 until the present, Williams & Associates International Corporation ("Williams"), a Florida based company owned and operated by Layne and Scarpon, was engaged in an "advance fee scheme" whereby the perpetrators offered to provide certain services including, but not limited to, financial guarantees, loans, and letters of credit, in return for the advance payment of fees for those services. (Compl. II at ¶¶ 15 – 23) (Dckt. 1.) Upon receipt of payment, the perpetrators allegedly failed to perform these services and never had the ability or intention to perform them. (Compl. II at ¶¶ 15 – 23.)

On November 22, 2004, Defendant Scarpon was appointed counsel. (Dckt. 16.) On January 31, 2005, Scarpon and Layne pled not guilty and, on February 4, 2005, at the first pretrial conference, a counsel of record was appointed to Layne. (Dckt. 31; 34.) A second conference was held on March 10, 2005. (Dckt. 33.) During the second conference, the Government was ordered to produce a list of alleged victims to the Defendants by March 21, 2005.

On March 25, 2005, Defendants filed the instant action which was <u>sub judice</u> on April

1

15, 2005. (Dckt. 31 – 35.) Oral argument was held on April 27, 2005.

## II. DISCUSSION

### A. Standard of Law

Federal Rule of Criminal Procedure 21(b) provides:

> For Convenience. Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

Fed. R. Crim. P. 21(b). The timing of a transfer motion is governed by Federal Rules of Criminal Procedure 21(d) which states that "[a] motion to transfer may be made at or before arraignment or at any other time the court or these rules prescribe." Fed. R. Crim. P. 21(d).

Motions to transfer venue are analyzed in accordance with the Supreme Court's decision in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964) ("Platt"). To determine whether a transfer is warranted, the Supreme Court detailed ten factors courts should consider:

> (1) Location of the Defendants; (2) Location of the Witnesses; (3) Location of the Events in Issue; (4) Location of Documents and Records; (5) Disruption of the Defendants' Business(es); (6) Expense to the Parties; (7) Location of Counsel; (8) Relative Accessibility of the Place of Trial (9) Docket Condition of Each District; and (10) Other Special Elements.

Platt, 376 U.S. at 243-44; see United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990) (same); United States v. Guastella, 90 F.Supp.2d 335, 338 (S.D.N.Y. 2000) (same). No one factor is dispositive; rather, "a Court should look to all of the factors and determine whether the interests of justice would be better served by changing the trial venue." United States v. Spy Factory, Inc., 951 F.Supp. 450, 456 (S.D.N.Y. 1997); see Maldonado-Rivera, 922 F.2d at 966 ("No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance.") (citation omitted). "As a general rule," however, "a criminal prosecution should be retained in the original district" in which it was filed, Guastella, 90 F.Supp.2d at 338, and the decision whether to transfer to another district, or not, is vested to the sound discretion of the trial court. See, e.g., United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990); United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979).

2

B.  *Platt* **Factors**

1.  *Location of the Defendants*

In accordance with the Second Circuit's decision in Maldonado, courts in this district have afforded "greater weight to the defendant's interest in being tried in the district of his residence than to any other factor." United States v. Martino, No. 00 Cr. 389, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000) (citing to United States v. Ohran, No. 99 Cr. 142, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000)); see also United States v. Russell, 582 F.Supp. 660, 662 (S.D.N.Y. 1984) ("wherever possible, defendants should be tried where they reside").

Here, it is undisputed that both Layne and Scarpon reside in Florida.[1] Scarpon has resided in Richey, Florida for approximately eleven years (Declaration of Steven M. Statsinger, dated March 25, 2005 ("Statsinger Decl.") at ¶ 8) and Layne has resided in the Miami area for more than thirty-two years. (Declaration of Martine M. Beamon, dated March 25, 2005 ("Beamon Decl.") at ¶ 7.) It is also undisputed that since the year 2000, Layne has served as the legally designated primary medical decision maker and medical proxy of his incapacitated mother, who also lives in the Miami area. (Declaration of Kevin C. Wallace, dated April 14, 2005 ("Wallace Decl.") at ¶ 4.)

In opposition to the Defendants' motion, the Government concedes Layne's significant responsibilities with regard to his mother and that Defendants' residence "weighs in favor of a transfer," but argues that these factors do not outweigh the Government's interest in trying the case in the Southern District of New York. (Gov't Opp. at 10.)

In United States v. Hanley, No. 94 Cr. 394, 1995 WL 60019 (S.D.N.Y. Feb. 10, 1995), a defendant filed a motion to transfer so as to be closer to his wife and three-year-old child in California. Id., 1995 WL 60019, at *2. In addition, the defendant had certain responsibilities with regard to his elderly mother; in particular, the defendant visited his mother four times per week. Id., 1995 WL 60019, at *2. In large measure, it was these facts that the Court in Hanley relied upon when it granted the motion to transfer. Id., 1995 WL 60019, at *2 ("While these facts alone are not sufficient to warrant transfer, defendant's residence and

---

[1] While Scarpon resides in the Middle District of Florida, Scarpon has consented to a transfer to the Southern District of Florida which is less than an hour from Miami by airplane and far less expensive than travel to New York.

3

family concerns clearly favor transferring these proceedings to California.")

While a defendant would always like to be close to his loved ones, this desire <u>alone</u> is insufficient to warrant a transfer. However, there are certain situations, such as those discussed in <u>Hanley</u> and here, where the defendant's familial obligations strongly suggest a trial close to where a defendant resides. Here, Layne's responsibilities include regular consultations with his mother's physicians about the course of treatment and care, the mother's reliance on Layne as her primary decision maker, and Layne's role in his mother's psychological and physical recuperation and treatment. (Wallace Decl. at ¶¶ 5, 6, 10.) In such certain circumstances, the first <u>Platt</u> factor, the location of the defendants, weighs in favor of transfer to the Southern District of Florida.

## 2. *Location of the Witnesses*

Defendants have the burden (as they have in general on such a motion) that the location of witnesses compels a transfer to the Southern District of Florida. <u>See</u> <u>e.g.</u>, <u>Guastella</u>, 90 F.Supp.2d at 339; <u>see</u> <u>Spy Factory, Inc</u>., 951 F.Supp. at 457.

According to the Defendants, the essence of the allegations on this score dictate that the primary witnesses reside in Florida and not New York. For instance, Williams' associates, attorneys, and employees are primarily located in Florida. As such, the "nerve center" of the fraud was in Florida and, therefore, the bulk, if not all, the fact witnesses are in Florida. In addition, according to the Defendants, a significant number of other witnesses, specifically character witnesses, are located in Florida.

The Government does not disagree and concedes that at least two of its own witnesses reside in Florida.[2] While a trial "will be an inconvenience to some witnesses, no matter where the trial is held, " <u>United States v. Coriaty</u>, No. 99 Cr. 1251, 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000), both the Government and the Defendants acknowledge that a significant number of witnesses are located in Florida.

Indeed, it appears that fewer witnesses will be inconvenienced by a Florida trial. In

---

[2] In <u>United States v. Coriaty</u>, No. 99 Cr. 1251, 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) the Government argued, as it does here, that the defendants failed to provide "specific examples of witnesses' testimony and their inability to testify because of location of trial." (<u>See</u> Govt. Mem. at 11) (quoting <u>Spy Factory</u>, 951 F.Supp. at 456; additional citations omitted.) In response defendants stated, as they did here, that they would provide specific information but only in an <u>ex parte</u> and <u>in camera</u> forum. (Def.'s Reply at 5.) Both the Government and the Defendants make similar contentions here and, therefore, as in <u>Coriaty</u>, "it is unnecessary to resolve this issue. The Court assumes the truth of Defendant's claim for sake of this motion."

4

addition, the potential inconvenience to witnesses located outside of Florida must be weighed against the effect a New York trial may have on the various Florida based character witnesses. "As courts have recognized, the impact of character witnesses is generally greater in the district where such witnesses live and work." United States v. Martino, No. 00 Cr. 389, 2000 WL 1843233, at *5 (S.D.N.Y. Dec. 14, 2000) (citing to Ohran, No. 99 Cr. 142, 2000 WL 620217, at *3; United States v. Aronoff, 463 F.Supp. 454, 458 (S.D.N.Y. 1978) (location of character witnesses is "significant")). This makes good sense since the character witnesses will come from the same neighborhood as the jury. Accordingly, given the impact of character witnesses and the number of Government and Defense witnesses that reside in Florida, the second Platt factor, the location of witnesses, weighs in favor of transfer to the Southern District of Florida.

### 3. *Location of the Events in Issue*

In Guastella, a defendant was indicted on wire fraud and other charges in connection with an alleged investment scheme. 90 F.Supp.2d at 335. The defendant maintained that the "nexus of events complained of by the government" was Las Vegas and, therefore, the case should be transferred from New York to Las Vegas. Id. In opposition, the Government argued that, even though the defendant marketed the scheme from Las Vegas, the victims were international in scope. Id. The court agreed, in part, with the Government and determined that "because the criminal activity that was alleged to have occurred in this case was national and even international in scope, and had ties to both New York and Las Vegas, the location of the events at issue favors neither side." Id. at 339.

Similarly, here, while the Defendants argue that the alleged "nerve center" of the alleged fraud was in Florida, the Government responds that only about 100 of the 500 victims currently reside in Florida. Therefore, as in Guastella, "because the criminal activity that was alleged to have occurred in this case was national . . . in scope," and had ties to both Florida and New York, "the location of the events at issue favors neither side." Id. at 339; Spy Factory, Inc., 951 F.Supp. at 457.

---

Coriaty, 2000 WL 1099920, at *2 n.2.

*4.     Location of Documents and Records*

It is well settled that "given the conveniences of modern transportation and communication," United States v. Martino, No. 00 Cr. 389, 2000 WL 1843233, at *5 (S.D.N.Y. Dec. 14, 2000), "location of relevant documents is of little consequence one way or the other." Coriaty, No. 99 Cr. 1251, 2000 WL 1099920, at *3. As such, courts in this district have recognized that the fourth Platt factor is not as influential today as in the past. See, e.g., Spy Factory, 951 F.Supp. at 458 ("Even where the Government has five file drawers of documents, the location of documents and records is not a major concern in these days of easy and rapid transportation.").

Here, the majority of documents are currently located in the Southern District of New York, but over a third of those documents are in electronic form and easily transferable at little cost. In addition, the easy transferability of the other documents renders this factor innocuous. Accordingly, the fourth Platt factor does not favor either retaining or transferring the action.

*5.     Disruption of the Defendants' Business(es)*

While "loss of business is a factor favoring transfer," Coriaty, No. 99 Cr. 1251, 2000 WL 1099920, at *3, "inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer of venue." Guastella, 90 F.Supp.2d at 341 (citing to United States v. Antia, No. 97 Cr. 733, 1999 WL 294788, at *2 (E.D.N.Y. Mar. 22, 1999)).

Here, Layne and his fiancée are the sole proprietors of two new businesses in the Miami area, a corporate fashion and etiquette consulting service and a real estate investment company. (Beamon Decl. at ¶ 28.) Layne's responsibilities in the new corporate fashion and etiquette business include "coordinating client correspondence, overseeing client filings, setting up and expanding marketing opportunities, including advertising and expanding new product lines, and managing bookkeeping and payment system responsibilities." (Beamon Decl. at ¶ 29.) The nature of the consulting business involves a substantial amount of client contact. As for the real estate investment company, Layne's responsibilities include visits to "dozens of sites each week." (Beamon Decl. at ¶ 30.)

While the Government persuasively argues that Layne's ability to conduct business would be substantially curtailed whether the trial was conducted in lower Manhattan or in Miami, the extent of the curtailment would be substantially less if the case was adjudicated in Miami. As the court in Spy Factor recognized, "[t]o a failing business that depends so much on personal involvement, even a few hours each weekday plus weekends could make a substantial difference." Spy Factory, Inc., 951 F.Supp. at 459 (citing to Aronoff, 463 F.Supp. at 458). While a trial inevitably demands a large portion of a defendant's time and energy, nonetheless, any time and effort that a defendant can offer to his company may be valuable to the company's long-term viability. See United States v. Russell, 582 F.Supp. 660, 663 (S.D.N.Y. 1984) ("Although a substantial amount of the [defendants'] time will be occupied by the trial wherever it is held, it will still be possible for them to carry on their business at least to a limited extent if they are tried in [the Southern District of Florida]. Such a potential reduction in business interruption is an additional factor in favor of transfer."); see also United States v. Olen, 183 F.Supp. 212, 219 (S.D.N.Y. 1960).

6. ***Expense to the Parties***

According to the Defendants, the expense of proceeding in the Southern District of New York poses a significant financial burden. In particular, the prospects of a two month long trial, away from home and business, imposes a substantial financial strain on the Defendants and militate towards a transfer to Florida. The Government argues that "this sixth Platt factor weighs only slightly in favor of transfer" and submitted a proposal to defray the costs:

> [The Government] would propose that it pay for two round trip tickets at a government rate for each defendant for travel for trial preparation and for trial[,] . . . the Government would propose that it defray the costs of defendants' lodging, at a government rate, for both trial preparation and trial . . . [and] the Defendants would be provided a per diem of $51.00 a day for each day of the defendants' stay in New York.

(Gov't Op. 25).

However, the Government's offer fails to adequately address the substantial cost a two-month long criminal trial conducted in Manhattan would impose on the Defendants. Defendants would not only be required to absorb significant out-of-pocket costs for family and friends to travel and stay in New York for a significant period of time, but Defendants

7

would also be required to pay for any additional trips to Florida outside the two trips paid for by the Government. Moreover, the Defendants would also be required to absorb the expense of moving to New York for a significant period of time.

Indeed, such a trial would impose a substantially larger financial burden on the Defendants than would a trial in the Southern District of Florida and, therefore, the sixth Platt factor weighs, if only slightly, in favor of transfer.

### 7. *Location of Counsel*

As opposed to Guastella, where four of the six defendants had New York based counsel that were substantively involved in the defense, Guastella, 90 F.Supp.2d at 341, and Spy Factory, where the company's attorneys were from New York and only one defendant had counsel from outside of New York, Spy Factory, Inc., 951 F.Supp. at 460, here, both defense counsel are New Yorkers and made it clear in their papers that Florida counsel would provide more qualified representation to the Defendants because of their keen knowledge of Florida substantive law.

The Government's arguments about the simplicity of the case and the inconvenience of a transfer fail to outweigh the Defendants' argument that they would obtain more knowledgeable representation in Florida and be better able to participate in the preparation of their own defense if their counsel was within driving distance. As such, the seventh Platt factor weighs in Defendants' favor.

### 8. *Relative Accessibility of the Place of Trial*

As in Spy Factory, neither the Government nor the Defendants have demonstrated "any problems of accessibility in the alternate forum." Spy Factory, Inc., 951 F.Supp. at 460. As such, the eighth Platt factor does not weigh toward either conclusion.

### 9. *Docket Condition of Each District*

Defendants went to great lengths to demonstrate that the docket of the Southern District of Florida is not under the same burdens as this Court's docket. According to the Administrative Office of the United States Courts, as of September 30, 2004, the Southern District of New York had "28 active judges with 3,686 criminal cases pending – more than 131 pending criminal cases per judge." (Beamon Decl. at ¶ 32.) As a result, the "median time for a criminal action to reach its conclusion in the Southern District of New York is 11.6 months and the median time to a jury trial is 17.2 months." (Beamon Decl. at ¶ 32.)

8

Conversely, as of September 30, 2004, the Southern District of Florida had "18 active judges with 1,057 criminal cases – just over 58 pending criminal cases per judge." (Beamon Decl. at ¶ 34.) The effect of the lighter case load is that the "median time for a criminal action to reach its conclusion in the Southern District of Florida is 6 months [and] the median time to a jury trial is 10.5 months." (Beamon Decl. at ¶ 34.)

The Court is not persuaded by the apparent disparity in docket conditions. This court is not too busy to adjudicate this matter. See Martino, 2000 WL 1843233, at *5; see also Coriaty, 2000 WL 1099920, at *4 ("docket conditions . . . do not favor either party."); Guastella, 90 F.Supp.2d at 341 (there "is no evidence before the Court to suggest that the docket conditions of either forum compel transfer"); Spy Factory, 951 F.Supp. at 460 ("I find that this factor does not weigh in favor of either party"). As such, the ninth Platt factor does not weigh toward either conclusion.

### 10. *Other Special Elements*

Under the "other special elements" factor, Defendants again emphasize Layne's role in his mother's healthcare. Layne's mother currently resides in a nursing him in Boca Raton, Florida which is approximately fifty miles from Miami. (Beamon Decl. at ¶ 38.) Defendants contend that Layne's role as the primary health care surrogate for his mother, his responsibility as her designee to authorize medical treatment should she be unable to do so, and his responsibility, shared with his brother, of durable power of attorney over his mother's financial affairs militate towards the Court granting Defendants' motion to transfer. (Beamon Decl. at ¶¶ 39, 40.)

### C. *Weighing of Platt Factors*

Upon careful consideration of each factor, the Court finds, that, on balance, Defendants have satisfied their burden. Six of the Platt factors weigh in favor of transfer. They include (1) location of the Defendants, (2) witnesses, (3) counsel, the (4) disruption to the Defendants' businesses, (5) expense to the parties and, most persuasively, (6) Layne's involvement in the care of his mother. Four of the Platt factors were neutral. The (1) relative accessibility of the place of trial, the (2) docket conditions, the (3) location of the events in issue, and (4) the location of the documents and records, do not weigh against a transfer.

9

issue, and (4) the location of the documents and records, do not weigh against a transfer.

### III. CONCLUSION

For the aforementioned reasons, Defendants' motion to transfer prosecution to the Southern District of Florida is GRANTED.

The case of <u>United States v. Fredric Blair Layne and Michael Scarpon</u>, 05 Cr.87, is ORDERED transferred to the United States District Court for the Southern District of Florida and the Clerk of the Court is so instructed.

The Clerk of the Court is instructed to close this motion and all other open motions and remove this case from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**May 2, 2005**

_____
U.S.D.J.